UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY DAVIS
and HATEMA DAVIS,

               Plaintiffs,        Civil Action No. 15-10547
                                       Honorable Paul D. Borman
      v.                            Magistrate Judge David R. Grand

CITY OF DETROIT, *et al.*,

               Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' RENEWED MOTION FOR DEFAULT JUDGMENT AS TO THE CITY OF DETROIT [65]

Before the Court is Plaintiffs' Renewed Motion for Default Judgment for Defendant City of Detroit's Failure to Comply with this Court's Prior Orders, which was filed on April 7, 2016. (Doc. #65). The City of Detroit ("City") failed to timely respond to this motion; rather, on June 5, 2016 – just two days before oral argument was scheduled to be heard – it filed its response in opposition to Plaintiffs' motion. (Doc. #81). Plaintiffs then filed a reply brief in support of their motion on June 6, 2016. (Doc. #82). An Order of Reference was entered on April 7, 2016, referring this motion to the undersigned pursuant to 28 U.S.C. §636(b)(1)(B). (Doc. #67).

The Court heard oral argument on the instant motion on June 7, 2016, after which it permitted the parties to file supplemental briefs in support of their respective positions. (Docs. #84, 86). Subsequently, an evidentiary hearing was held on August 1, 2016. The Court having considered the testimony taken at that hearing, as well as the parties' filings and the arguments of counsel, the matter is ripe for ruling.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' Motion for

Default Judgment (**Doc. #65**) be **DENIED IN PART** to the extent it seeks entry of default judgment against the City, and **GRANTED IN PART** to the extent it seeks monetary sanctions.

**II.    REPORT**

    **A.    The Allegations in Plaintiffs' Amended Complaint**

In this case, Plaintiffs Timothy and Hatema Davis ("Plaintiffs") generally allege that the defendants (primarily City of Detroit police officers) wrongfully raided their home, without probable cause, and seized their lawful marijuana grow operation. (Doc. #21). Plaintiffs further allege that the defendants have a pattern or practice of engaging in these unlawful searches and seizures of legitimate marijuana grow facilities in and around the City of Detroit. (*Id.*).

    **B.    The Discovery Requests at Issue and the Court's Prior Orders**

On April 23, 2015, Plaintiffs served the defendants with their First Request to Produce Documents, seeking, *inter alia*, the City's complete Internal Affairs ("IA") files related to the raid on their home, as well as its IA files related to any alleged misconduct by the individual defendants, including Arthur Leavells, James Flanigan, and Stephen Geelhood. (Doc. #65 at Ex. A, Requests 6 and 7). The City responded, in part, to Plaintiffs' discovery requests, but, on June 30, 2015, filed a motion seeking a protective order shielding its IA files from production, on the basis that the investigations were ongoing and contained privileged information. (Doc. #18).

Oral argument was heard on the City's motion on September 15, 2015, after which this Court rejected the City's assertion that the IA files need not be produced because the investigations were "ongoing." (Doc. #36). The Court ordered the City to produce, within 30 days of its Order, all documents responsive to Requests 6 and 7. (*Id.*). However, recognizing that these files could contain privileged information, the Court permitted the City to "redact from such documents information that is deliberative or evaluative in nature and, thus, protected by

the deliberative process privilege." (*Id.* at 1). The Court also ordered the City to "produce to Plaintiffs a privilege log detailing the reasons for such redactions" within 30 days. (*Id.*).

In the meantime, Plaintiffs had served the City with their Second Request to Produce Documents, seeking, in relevant part, the "complete personnel file" for each of the individual defendants (collectively the "Personnel Files"). (Doc. #65 at Ex. C, Request 1). The City initially objected to producing such documents. (*Id.* at Ex. D). On October 8, 2015, however, the parties stipulated to entry of a protective order, which covered the contemplated production of both the Internal Affairs files discussed above and the Personnel Files. (Doc. #44).

On November 3, 2015, the City provided (untimely) Supplemental Responses to Plaintiffs' discovery requests; however, it still failed to produce its IA file related to Defendant Leavells (identified by the City as "IA File Case No. 14-084"). (Doc. #65 at Ex. E, Responses 7(e) and (f)). Instead, the City simply reiterated its prior objection – which had already been rejected by this Court – that, because there was an "open pending case," it would not produce this file. (*Id.*). The City also failed to produce the requested Personnel Files.

As a result, on January 26, 2016, Plaintiffs moved for an order to show cause and/or for default judgment pursuant to Fed. R. Civ. P. 37(b), arguing that the City had failed to comply with previous orders of the Court. (Doc. #54). The City did not respond to this motion. On March 3, 2016, District Judge Paul Borman entered an order granting in part and denying in part Plaintiffs' motion. (Doc. #58). In his Order, Judge Borman denied Plaintiffs' request for entry of default judgment, stating as follows:

> At this time, the Court finds that the requested default judgment is too severe a sanction under Rule 37(b)(2)(A). While Defendant City of Detroit has clearly failed to comply with Magistrate Judge Grand's September 15, 2015 Order, the Court finds that these facts do not illustrate the required "extreme case" to justify such a sanction. The Court also notes that entering a default judgment against Defendant City of Detroit

3

would be unjustified at this time because Defendant City of Detroit has not been warned [that] a failure to comply with the September Order could result in such a harsh sanction. Rather, the Court holds that the appropriate course of action is to order Defendant City of Detroit to comply with the September Order or show cause in writing for its failure to do so.

For all these reasons, this Court will GRANT IN PART and DENY IN PART Plaintiffs' Amended Motion for Order to Show Cause and/or Default Judgment (ECF No. 54) such that Plaintiffs' request for an order to show cause is GRANTED but the request for a default judgment and attorneys fees is DENIED at this time.

Further, the Court ORDERS that Defendant City of Detroit either COMPLY with Magistrate Judge Grand's September 15, 2015 Order within twenty-one days of this Order and supply responsive documents to Plaintiffs' First Request to Produce No. 7 [relating to the IA Files], Plaintiffs' Second Request to Produce No. 1 [relating to the Personnel Files], and supply Plaintiffs with the appropriate privilege log, OR SHOW CAUSE in writing within 21 DAYS of the date of this Order for its failure to do so.

The Court also cautions Defendant City of Detroit that this Order serves as a warning that further failure to comply with the September 2015 Order or failure to respond to this Order to Show Cause may result in the imposition of a more harsh sanction under Rule 37(b)(2)(A) including, but not limited to, entry of a default judgment.

(*Id.* at 5-6).

### C. The Instant Motion, Oral Argument, and Evidentiary Hearing

In the instant motion, Plaintiffs assert that, after entry of Judge Borman's March 3, 2016 Order, the City produced some additional documents, but still failed to produce all responsive documents, as well as a privilege log. (Doc. #65 at 6). Specifically, at issue in the pending motion are Plaintiffs' contentions that the City failed to produce three categories of documents: (1) IA File 14-084 (relating to Defendants Leavells and Geelhood); (2) IA File 15-078 (relating to the raid on Plaintiffs' home); and (3) the Personnel Files.

### 1. *Internal Affairs File 14-084*

Plaintiffs assert in their motion that, despite the District Court's March 3, 2016 Order, the

4

City did not produce IA File 14-084, did not produce a privilege log regarding this file, and did not show cause in writing for these failures. (Doc. #65 at 14-15). In its response – again, filed just two days before oral argument – the City conceded these facts, providing only the following cryptic explanation for its failure to comply with Judge Borman's Order:

> With regards to IA File No. 14-084, which based on the representation of Sgt. Juan Ayala, investigator in charge of the file, other than the complaint, the file has not indexed and all documents compiled until the file is submitted for administration, i.e. approval for closure.

(Doc. #81 at 8). At oral argument on June 7, 2016, counsel for the City confirmed that this IA file had not been produced, indicating that despite the prior court orders compelling its production, the documents necessary to "complete" the final report regarding this investigation had not been "gathered."

As a result, the Court scheduled an evidentiary hearing, and ordered the City "to produce Sergeant Juan Ayala to testify in person and provide evidence … regarding 'IA File No. 14-084,' including the 'representation' [quoted above] …." (Doc. #83 at 1). At that evidentiary hearing, on August 1, 2016, counsel for Plaintiffs indicated that – just one week before – the City had finally produced most of IA File 14-084, absent perhaps some recorded statements. Apparently, the City also produced a privilege log regarding this file on the day of the evidentiary hearing.

At that hearing, Sergeant Ayala testified that he was assigned this file in June of 2014; between that time and July of 2015, however, the Wayne County Prosecutor's Office was conducting its own investigation, requiring him to "stand down" and await the outcome of those proceedings. When Sergeant Ayala learned that charges would not be brought by the prosecutor, he had already transferred out of Internal Affairs; nevertheless, a decision was quickly made that he would maintain responsibility for this ongoing investigation. Sergeant Ayala further testified that he did very little on this file until March or April of 2016, when Commander Sims advised

5

him that the file was the subject of a discovery request in this case. She did not, however, advise him that the City had been ordered by the Court to produce this file expeditiously, nor did she simply request that he turn over what he had at that time. According to Sergeant Ayala, when Commander Sims told him she needed the file, he started working "eighteen hours a day" to complete the investigation and prepare a "final report." He further testified, however, that as long ago as July 2014, he had accumulated a substantial amount of material (including pictures, video, witness statements, and recordings), which – at any point thereafter – could easily have been handed over "as is" if such a request had been made. In other words, Sergeant Ayala essentially testified that if he had received proper instructions from the City, he could have provided all of the materials contained in IA File 14-084 within a short amount of time, despite the fact that no "final report" had yet been prepared.

### 2. *Internal Affairs File 15-078*

Plaintiffs also assert in their motion that, although the City produced *part of* IA File 15-078, relating to the raid on Plaintiffs' home, it did not produce the *complete* file. (Doc. #65 at 15-18). Specifically, Plaintiffs indicate: "Several pages of IA Case File 15-078 refer to documents, recorded statements of defendants (and other witnesses), and none of these supporting documents have been produced, despite Plaintiffs' request for Defendant's 'complete' internal affairs files related to this matter …." (*Id.* at 15-16). In its response to Plaintiffs' motion – which, again, was not filed until two days before oral argument – the City represented that it had just recently produced this complete IA file to Plaintiffs (including a compact disc with relevant recordings). (Doc. #81 at 2, 8). At oral argument, counsel for Plaintiffs indicated that he had received these materials just the day before, more than three months after Judge Borman's March 2016 Order, and had not yet been able to determine whether the production was in fact

complete. Even at the time of the August 1, 2016 evidentiary hearing, counsel for Plaintiffs voiced a concern that certain recordings, statements, and/or videos had not yet been produced, although these items were not identified with specificity.

### 3. *The Personnel Files*

Finally, Plaintiffs assert that the City failed to comply with prior court orders requiring production of the individual defendants' complete personnel files. (Doc. #65 at 18-20). Specifically, Plaintiffs point to several discrepancies within the materials produced by the City, which they claim suggest that the complete files have not yet been produced. For example:

- The produced personnel files each contain a section labeled "Disciplinary Actions – Complaints." In Defendant Geelhood's personnel file, there is only one document in this section – an Inter-Office Memorandum related to a raid conducted upon the premises of an individual named Brent Rayis (the "Rayis Memo"). (Doc. #85-1 at 27-30). This is despite the fact that Defendant Geelhood's Employee Profile indicates that he has been the subject of 21 citizen complaints (*Id.* at 5), and despite the fact that he admitted having been suspended for alleged misconduct relating to another raid on a legal marijuana provider. Thus, Plaintiffs claim this is evidence that Defendant Geelhood's personnel file has not been produced in its entirety.

- The City produced what it represents to be Defendant Geelhood's complete personnel file (Doc. #85-1), the first page of which contains an "Employee Profile" apparently generated from "DPD Management Awareness System 2.0." The first page of this document indicates that it is "Page 1 of 13," but only pages 1 through 4 were produced (and no privilege log was provided with respect to pages 5 through 13). (*Id.*). Again, then, Plaintiffs claim this suggests that the personnel files produced were incomplete.

In its response to Plaintiffs' arguments, the City says only: "Defendant City has also submitted the complete personnel files of the officers with only their personal information and medical information redacted." (Doc. #81 at 2). As Plaintiffs point out in their reply, however, the City did not provide any affidavit or other attestation as to the truth of this assertion. (Doc. #82 at 3).

At the August 2016 evidentiary hearing, Sergeant Mark Henning testified as to the City's policies and practices in maintaining personnel files. Specifically, Sergeant Henning testified

7

that the pages printed from the Management Awareness System ("MAS") are not considered part of an employee's personnel file; rather, this program is simply a management tool that allows supervisors to quickly access information about their subordinates. Thus, the City asserts that any MAS information it provided was *in addition to* the requested Personnel Files. With respect to the "complaints" sections of the personnel files produced, Sergeant Henning testified that there typically is nothing contained in these sections, because both citizen complaints and IA complaints are handled by other departments (and, thus, maintained in those departments, apparently). Finally, Sergeant Henning testified that, at times, he is provided with notices of disciplinary action, which he then places in an individual officer's personnel file; this does not always happen, however, as the City apparently has no set procedures in place to ensure that its personnel files are accurate.

**D. Analysis**

Pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi), where a party fails to obey an order to provide or permit discovery a court may "issue further just orders" including, *inter alia*, an order "rendering a default judgment against the disobedient party." The Sixth Circuit has held that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). Such an action "should be imposed only if the court finds that the failure is due to willfulness, bad faith, or fault." *Edwards v. City of Grand Junction, Tenn.*, 1999 WL 232694, at *2 (6th Cir. Apr. 15, 1999) (citing *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)).

In deciding whether to enter default judgment against a party pursuant to Rule 37(b)(2)(A), courts consider four factors: (1) whether the party's failure to cooperate in

discovery was due to willfulness, bad faith, or fault, as opposed to an inability to cooperate; (2) whether the adversary was prejudiced by the failure to cooperate in discovery; (3) whether the party to be sanctioned was warned that failure to cooperate could lead to default judgment; and (4) whether less dramatic sanctions were imposed or considered before default judgment was entered. *See Bank One of Cleveland*, 916 F.2d at 1073.

In this case, with respect to the first factor, it is clear that the City failed to comply with Judge Borman's March 3, 2016 Order, which required it to produce IA Files 14-084 and 15-078, as well as the Personnel Files, within twenty-one days. Although the City's counsel asserted at oral argument that IA File 14-084 could not be timely produced because the documents necessary to "complete" the final report had not been "gathered," Sergeant Ayala later testified that if City representatives had merely instructed him to turn over the file materials he had "as is," he could have done so very quickly. Similarly, although the City produced IA File 15-078 on the eve of oral argument, it gave no explanation for its failure to produce this file within the timeframe specified by the District Court. Thus, where the City has made no showing that its failure to comply with Judge Borman's Order was due to an "inability to cooperate," the Court can only attribute such failure – at least to some degree – to willfulness, bad faith, and/or fault.

With respect to the second factor, Plaintiffs argue that they have been prejudiced by the City's failure to comply with Judge Borman's Order. (Doc. #65 at 15). Specifically, Plaintiffs took the depositions of both Defendants Geelhood and Leavells, despite not having received IA File 14-084, and thus were not able to question these defendants about the contents of that file. Similarly, Plaintiffs were forced to cancel other depositions because they had not yet received all of the documents ordered to be produced. At this juncture, however, it appears that Plaintiffs are

9

satisfied with the documents they have received from the City.[1] Although the delay in this production clearly worked to the detriment of Plaintiffs, the Court is not persuaded that Plaintiffs have suffered prejudice that cannot be remedied by a sanction less severe than entry of default judgment.

With respect to the third and fourth factors, the City has previously been warned that its failure to comply with the March 3, 2016 Order "may result in the imposition of a more harsh sanction under Rule 37(b)(2)(A) including, but not limited to, entry of a default judgment. (Doc. #58 at 6). However, less dramatic sanctions have not previously been imposed. Indeed, in his March 3, 2016 Order, Judge Borman specifically denied Plaintiffs' first request for default judgment, as well as their request for attorneys' fees. (*Id.* at 5-6).

In summary, then, despite the City's failure to comply with previous orders of this Court, this simply is not that "extreme case" where entry of default judgment is warranted. *See, e.g., Buck v. U.S. Dept. of Agriculture*, 960 F.2d 603, 608 (6th Cir. 1992) (default judgment would not be imposed absent "a clear record of delay or contumacious conduct" by the offending party and when "no alternative sanction would protect the integrity of pre-trial procedures"). Here, where Plaintiffs have now received the documents requested,[2] and where the City has not been previously sanctioned for its lack of compliance, the Court is not persuaded that the most severe

---

[1] Although counsel for Plaintiffs asserted at the evidentiary hearing that they were still missing recordings from Internal Affairs File Nos. 14-084 and 15-078, they did not specify exactly what they believed had not been produced. Moreover, counsel for the City indicated that if certain recordings had been overlooked, such production would promptly be made. Thus, where it appeared in August 2016 that the City's production was at least substantially complete, and where Plaintiffs have not since made the Court aware of any ongoing issues, the Court can only conclude that the City has now finally complied with Judge Borman's March 2016 Order.

[2] The City asserts that it has produced the Personnel Files in their entirety. Although Plaintiffs still question the accuracy of this representation, the Court notes that to the extent additional materials exist which were not included in the Personnel Files, but should have been, the City is barred by statute from using such materials in this judicial proceeding. *See* M.C.L. §423.502.

sanction of default judgment is appropriate.

With that said, however, the City's failure (after receiving an express warning) to comply with Judge Borman's Order has prejudiced Plaintiffs to the degree that monetary sanctions are warranted. For this reason, the Court RECOMMENDS that Plaintiffs be awarded monetary sanctions in the form of the reasonable costs and fees they incurred in connection with the instant motion, including: (1) preparing the motion and supporting briefs (Docs. #65, 82, 84); (2) preparing for and attending the June 7, 2016 hearing on their motion for default judgment; and (3) preparing for and attending the August 1, 2016 evidentiary hearing regarding this motion.

Unless either party files objections to this Report and Recommendation within the time permitted, or if objections are filed and overruled by the district judge, Plaintiffs' counsel may submit an affidavit detailing the reasonable costs and expenses associated with the above items (including a list of the hours spent, a description of the work performed, the identity of the attorney performing the work, and that attorney's hourly billing rate).[3] If Plaintiffs' counsel submits such a statement, counsel for the City may file a response within seven (7) days. The Court will then issue a ruling on the amount which the City must reimburse Plaintiffs.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiffs' Renewed Motion for Default Judgment (**Doc. #60**) be **GRANTED IN PART** to the extent it seeks an award of monetary sanctions and **DENIED IN PART** to the extent it seeks entry of default judgment against the City.

Dated: September 29, 2016  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

---

[3] Prior to making such a submission, counsel shall meet and confer in a good-faith attempt to agree on the costs and fees to be awarded.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2016.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager