UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY DAVIS
and HATEMA DAVIS,

          Plaintiffs,         Civil Action No. 15-10547
                                    Honorable Paul D. Borman
v.                               Magistrate Judge David R. Grand

CITY OF DETROIT, *et al.*,

          Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [115]

Before the Court is Plaintiffs' Motion for Default Judgment Against Defendants for Their Discovery Abuses and Failure to Comply with this Court's Prior Orders, which was filed on May 31, 2017. (Doc. #115). Defendants City of Detroit ("City") and Arthur Leavells ("Leavells") filed responses to this motion on June 6, 2017, and June 14, 2017, respectively. (Docs. #118, 119). Plaintiffs then filed a reply brief in support of their motion on June 20, 2017. (Doc. #122).

An Order of Reference was entered on June 2, 2017, referring this motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #117). The Court heard oral argument on August 22, 2017, and the matter is now ripe for ruling.

### I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' Motion for Default Judgment (**Doc. #115**) be **DENIED**.

### II. REPORT

    **A.    The Allegations in Plaintiffs' Amended Complaint**

In this case, Plaintiffs Timothy and Hatema Davis ("Plaintiffs") generally allege that the

Defendants (primarily City of Detroit police officers) wrongfully raided their home, without probable cause, and seized their lawful marijuana grow operation. (Doc. #21). Plaintiffs further allege that the Defendants have a pattern or practice of engaging in these unlawful searches and seizures of legitimate marijuana grow facilities in and around the City of Detroit. (*Id.*).

### B. The Alleged Discovery Abuses

In the instant motion, Plaintiffs seek entry of a default judgment against the City and Leavells "based on their intentional withholding of relevant discovery in violation of the court rules and contrary to this Court's prior orders [Dkts 36, 44, & 58]." (Doc. #115 at 2). Specifically, Plaintiffs assert that, during Plaintiffs' May 30, 2017 depositions, counsel for Leavells revealed – for the first time – "never before seen photographs purportedly taken [by Leavells on his personal cell phone] during the raid of Plaintiffs' house." (*Id.*). Plaintiffs argue that Defendants violated their discovery obligations in numerous respects by withholding these photographs. Specifically, Plaintiffs point to the following:

- The photographs were not produced with the Defendants' initial disclosures, as required by Fed. R. Civ. P. 26(a)(1)(A). (*Id.* at 14-15).

- On April 23, 2015, Plaintiffs served their First Request to Produce, seeking, *inter alia*, "any and all documents in the possession of, or available to Defendants … relating, in any way, to [Plaintiffs' address that was raided by members of the City of Detroit Police Department]." (*Id.* at Ex. A, Request No. 1). The photographs in question were not produced in response to this request for production. (*Id.* at Ex. B). At the hearing, however, Plaintiffs conceded that these discovery requests were served only on the City, not on Leavells.

- On July 23, 2015, Plaintiffs served their Second Request to Produce, seeking, *inter alia*, any documents that are in any way related to the allegations set forth in Plaintiffs' Complaint; any documents that may assist or in any way substantiate Plaintiffs' allegations that they were subjected to illegal searches; and all exhibits Defendants plan to introduce at trial. (*Id.* at Ex. D). Again, the photographs in question were not produced in response to these requests for production. Again, however, Plaintiffs conceded at the hearing that these discovery requests were served only on the City, not on Leavells.

- On September 15, 2015, this Court entered an order compelling the City to

2

produce documents responsive to certain discovery requests, which – at least arguably – encompass the photographs now at issue. (Doc. #36). On March 3, 2016, the District Court entered a follow-up order compelling the City to comply with this Court's prior order. (Doc. #58). Despite entry of these two orders, the photographs were not produced.

- On March 9, 2016, Plaintiffs issued a Notice of Deposition *duces tecum* to Leavells for a deposition to occur on March 14, 2016. (Doc. #115 at Ex. E). Attached to that deposition notice was "Schedule A," which requested that Leavells produce several categories of documents nearly identical to those requested in Plaintiffs' First and Second Requests to Produce, including "[t]he complete Detroit file … relating to the execution of a search warrant at [Plaintiffs' residence]" … and "[a]ll documents in the possession of, or available ***to Detroit*** … relating, in any way, to" Plaintiffs. (*Id.* (emphasis added)). Leavells' counsel responded in writing to the Notice of Deposition *duces tecum*, stating that Leavells "is not in possession of any of the materials listed in [the] Notice." (*Id.* at Ex. F).

In summary, Plaintiffs argue that default judgment is warranted against both the City and Leavells, pursuant to Fed. R. Civ. P. 37(b), because they failed to produce the photographs at issue with their initial disclosures, in response to requests for production, in accordance with orders of this Court, and in response to the Notice of Deposition *duces tecum* issued to Leavells. (*Id.* at 2-9).

**C.     Analysis**

Pursuant to Fed. R. Civ. P. 37(b)(2)(A), where a party fails to obey an order to provide or permit discovery a court may "issue further just orders" including, *inter alia*, an order "rendering a default judgment against the disobedient party[.]" However, the Sixth Circuit has held that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). Such an action "should be imposed only if the court finds that the failure is due to willfulness, bad faith, or fault." *Edwards v. City of Grand Junction, Tenn.*, 1999 WL 232694, at *2 (6th Cir. Apr. 15, 1999) (citing *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)).

3

In deciding whether to enter default judgment against a party pursuant to Rule 37(b)(2)(A), courts consider four factors: (1) whether the party's failure to cooperate in discovery was due to willfulness, bad faith, or fault, as opposed to an inability to cooperate; (2) whether the adversary was prejudiced by the failure to cooperate in discovery; (3) whether the party to be sanctioned was warned that failure to cooperate could lead to default judgment; and (4) whether less dramatic sanctions were imposed or considered before default judgment was entered. *See Bank One of Cleveland*, 916 F.2d at 1073. After considering these factors, the Court concludes that default judgment is not warranted against either the City or Leavells.

### 1. The City

With respect to the City of Detroit, there is no dispute that (1) it did not produce the photographs at issue with its initial disclosures; (2) it did not produce the photographs in response to Plaintiffs' discovery requests; and (3) it did not produce the photographs prior to Plaintiffs' May 2017 depositions, despite previous orders of this Court and the District Court. The City argues, however, that the photographs in question were never within its possession, custody, or control; indeed, the City asserts that "[t]he first and only time counsel for Defendant City of Detroit ever saw or knew of the existence of the photographs … was at the depositions of Plaintiffs on May 30, 2017" when Leavells' counsel attempted to question Plaintiffs about them. (Doc. #118 at 7).

In their motion, Plaintiffs do not challenge the City's assertion that it never had possession, custody, or control over the photographs at issue. But Plaintiffs nevertheless assert that the City was "duty-bound to seek such documents from other sources including its agents, employees and/or legal counsel." (Doc. #115 at 13). This argument lacks merit in multiple respects. First, at the time the discovery requests were issued to the City, Leavells was not an

4

agent or employee of the City; rather, he was a *former* City of Detroit Police Officer. Plaintiffs offered no legal authority for the proposition that an employer served with a discovery request has an ongoing legal obligation to seek and obtain requested discovery from a former employee.[1] This position seems dubious, at best, considering that an employer has no control or authority over a former employee.[2] Moreover, finding such an obligation to exist in this case would make little sense considering that the former employee – Leavells – is also a party in the action from whom the discovery could have been sought directly.

The Court also rejects Plaintiffs' argument – again unsupported by any law – that because the City provided a legal defense to Leavells in this action through outside legal counsel (i.e., paid some or all of Leavells' attorney's fees) the City should not be permitted to "point[] the finger at Defendant Leavells for the discovery abuse." (Doc. #115 at 14). At oral argument, Plaintiffs went so far as to characterize Leavells' attorney as the City's attorney, while counsel for Leavells indicated that he had been paid by the City for only a "brief" period of time. Neither position is relevant to the issue before the Court; an attorney's duty is to his or her client, regardless of who pays the fees. As explained in the Comment to Rule 1.7 of the Michigan

---

[1] On August 18, 2017, Plaintiffs filed a Motion to Compel Production at August 22, 2017 Hearing, asking this Court to compel production of documents requested in subpoenas issued to the Defendants. (Doc. #134). Plaintiffs claim that the requested documents are relevant to determine whether the City had a duty to obtain the photographs from Leavells, or to make Leavells aware that their production had been requested. (*Id.*). As set forth herein, however, Plaintiffs cited no legal authority in support of their argument that such a duty existed. Moreover, the Court does not view the documents requested as relevant to the issues discussed herein. Thus, the Court will deny Plaintiffs' Motion to Compel Production (Doc. #134).

[2] Fed. R. Civ. P. 34(a) allows a party to ask for, and requires a party to produce for inspection and copying, documents and things within the responding party's "possession, custody, or control." "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the **legal right** to obtain the documents on demand." *In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (emphasis added). *See also Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004) (defining "control" as "the legal right or ability to obtain the documents from another source upon demand ….").

Rules of Professional Conduct:

> INTEREST OF PERSON PAYING FOR A LAWYER'S SERVICE
>
> A lawyer may be paid from a source other than the client if the client is informed of that fact and consents and the arrangement does not compromise ***the lawyer's duty of loyalty to the client.*** See Rule 1.8(f). For example, . . . when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for ***separate*** legal representation of the directors or employees if the clients consent after consultation and the arrangement ensures the lawyer's professional independence.

MRPC 1.7, comment (emphasis added).

In turn, MRPC 1.8(f) provides:

> (f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> > (1) the client consents after consultation;
> >
> > (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
> >
> > (3) information relating to representation of a client is protected as required by Rule 1.6.

*See also Yoost v. Caspari*, 295 Mich. App. 209, 227, 813 N.W.2d 783, 793 (2012) ("That Asher paid Yoost's legal fees does not establish that Asher exercised control over Yoost in this litigation.").

Because Plaintiffs have not established that the City failed to cooperate in discovery the Court need not analyze the remaining *Bank One* factors. As explained above, the evidence establishes that the City was not aware of – and did not have possession, custody, or control of – the photographs at issue prior to their production by Leavells in May 2017. Thus, entry of default judgment against the City is not warranted.

    2.    *Leavells*

With respect to three of Leavells' alleged discovery violations – namely, his failure to

produce the photographs (1) in response to requests for production; (2) in accordance with orders of this Court; and (3) in response to the Notice of Deposition *duces tecum* – Plaintiffs have not shown a willful or bad faith failure to cooperate in discovery. To begin with, Plaintiffs concede that neither their First Requests to Produce nor their Second Requests to Produce were served on Leavells. (Doc. #115 at 16, n. 2). Thus, Leavells did not violate any discovery obligations in failing to produce the photos in response to these discovery requests. Similarly, although Plaintiffs spend a significant portion of their motion discussing the Court's previous discovery orders, they gloss over the fact that these orders compelled only *the City* – not Leavells – to produce certain documents. (Docs. #36, 58). And, finally, Plaintiffs have failed to establish that Leavells violated his discovery obligations with respect to the Notice of Deposition *duces tecum*, as a close reading of its "Schedule A" reveals that it requested production of items such as "[t]he complete *Detroit* file … relating to the execution of a search warrant at [Plaintiffs' residence]" and "[a]ll documents in the possession of, or available to *Detroit* … relating, in any way, to" Plaintiffs. (Doc. #115 at Ex. E, ¶¶ 7, 11 (emphasis added)). In other words, the requests did not specifically ask for any relevant images captured by *Leavells* or in *Leavells'* possession; they sought "*Detroit's*" records. Although a more forthright and cooperative approach may have been for Leavells to construe the subpoena as seeking his own documents, because that is not what was sought, technically, Leavells' failure to bring the photographs to his deposition was not a discovery violation.[3]

With respect to Leavells' failure to produce the photographs with his initial disclosures,

---

[3] Plaintiffs also assert in their motion and reply brief that "Plaintiffs' counsel affirmatively confirmed with Defendant Leavells during his deposition that he had no such documents[.]" (Doc. #115 at 15; *see also* Doc. #122 at 4). Plaintiffs did not, however, provide a citation to that portion of Leavells' deposition where this alleged confirmation was made, and it is unclear exactly what he was asked to "confirm."

the analysis is different. To begin with, it certainly appears that Leavells had an affirmative obligation to produce these photographs with his initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(ii), which requires that a party provide "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Leavells has asserted several affirmative defenses in this case to which these photos are highly relevant. Specifically, Leavells has repeatedly asserted his belief that Plaintiffs were non-compliant with state law (i.e., by arguing that they had too many marijuana plants, that the plants were not properly secured in a locked space, that Plaintiffs had too much product in their home, etc.). (Doc. #90).[4] Plaintiffs claim that the photographs at issue depict their plants, the location of the plants, and where/how the plants were stored, making them "directly relevant to Defendant Leavells' defenses in this action." (Doc. #115 at 15). The Court agrees and therefore finds that Leavells had an obligation to produce the photographs at issue with his initial disclosures.[5]

Leavells argues, however, that his failure to timely produce the photos was not willful or in bad faith but, instead, was the result of mistake or oversight. (Doc. #119 at 8). The timing of

---

[4] Indeed, in his response to the instant motion, Leavells indicated that he "will argue that Plaintiffs were carrying on an illegal enterprise, growing marijuana, and only lost the products of their illegal enterprise." (Doc. #119 at 5). Clearly, the photographs at issue are directly relevant to that argument.

[5] Leavells argued in his response brief that he did not produce the photographs with his initial disclosures because, "[b]elieving that Plaintiffs might falsely deny that their 'marijuana grow operation' was in violation of the [law], Defendant, Leavells, sought to take Plaintiffs' depositions, impeaching them with the photos." (Doc. #119 at 7). Elsewhere in that filing, however, Leavells acknowledged that the photographs go directly to his defense in this case, claiming that they "support the narrative that Plaintiffs were for-profit drug dealers, not law-abiding 'caregivers.'" (*Id.* at 8). And, at oral argument, counsel for Leavells conceded that the photographs go directly to Leavells' defenses in this matter. As such, Leavells was required to produce the photographs with his initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(ii).

the disclosure is highly suspect, though, as is the fact that counsel for Leavells refused to mark the photographs as deposition exhibits and make them part of the record when Plaintiffs' counsel requested this be done. All told, Leavells' protests aside, where he held onto the photos at issue in order to ambush Plaintiffs at their depositions, it certainly appears that his discovery violation was willful.

With respect to the remaining factors, Plaintiffs argue that they have been prejudiced by Leavells' failure to produce the photographs in a timely manner. (Doc. #115 at 18-19). Specifically, Plaintiffs claim that several depositions have already been taken in this case; that the photos in question are "relevant and material to each and all of the prior depositions"; and that, as a result, a record has been created that is not accurate. (*Id.* at 18). Beyond this conclusory assertion, however, Plaintiffs have failed to explain exactly how they have been (or may be) prejudiced by the late production of these photos. As Leavells points out, the photographs taken were of *Plaintiffs' home*; given that fact alone, it is hard to imagine that Plaintiffs could be surprised by what is depicted in the photographs. Moreover, Plaintiffs seemed to argue that the photographs help their case and that they may therefore wish to use them at trial. (Doc. #122 at 2-3). Again, the prejudice to Plaintiffs is not clear.

The third and fourth factors also weigh against entering a default judgment as to Leavells; he has not previously been warned that his failure to cooperate in discovery could lead to default judgment, nor have less drastic sanctions previously been imposed on him. In summary, where the photographs at issue have now been produced to Plaintiffs, and where Leavells has not been previously warned about or sanctioned for a lack of compliance with discovery obligations or orders, the Court is not persuaded that this is the "extreme" case where the most severe sanction of default judgment is warranted. *See, e.g., Buck v. U.S. Dept. of Agriculture*, 960 F.2d 603, 608

(6th Cir. 1992) (default judgment would not be imposed absent "a clear record of delay or contumacious conduct" by the offending party and when "no alternative sanction would protect the integrity of pre-trial procedures") (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)).

Nevertheless, *some* sanction is warranted for Leavells' failure to produce the photographs at issue with his initial disclosures. Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Here, Leavells has not argued that his failure to timely disclose the photographs at issue was either substantially justified or harmless, and, indeed, as set forth above, the Court sees no indication that this is the case. Thus, Leavells should be precluded from using the photographs at issue to supply evidence to support a motion, at a hearing, or at trial, whether for purposes of impeachment or otherwise.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiffs' Motion for Default Judgment (**Doc. #115**) be **DENIED**, but that Leavells be precluded from making any affirmative use of the photographs in question.

Dated: September 20, 2017　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and

recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 20, 2017.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager