UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY DAVIS and
HATEMA DAVIS,

        Plaintiffs,        Civil Action No. 15-10547
                                       Honorable Paul D. Borman
v.                                            Magistrate Judge David R. Grand

CITY OF DETROIT, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [88]

Before the Court is a Motion for Class Certification, filed by Plaintiffs Timothy and Hatema Davis ("Plaintiffs") on July 14, 2016. (Doc. #88). All of the individual defendants in this matter are current and/or former employees of Defendant City of Detroit's police department. Defendants filed responses to Plaintiffs' motion for class certification on July 25, 2016, and July 29, 2016. (Docs. #91, 92). Plaintiffs filed a reply in support of their motion on August 3, 2016. (Doc. #93). Defendants then filed two supplemental briefs – on November 6, 2017, and December 4, 2017 (Docs. #145, #151) – and Plaintiffs filed their own supplemental briefs on January 19, 2018, and March 28, 2018 (Docs. #155, #162).

An Order of Reference was entered on December 18, 2017, referring this motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #156). The Court heard oral argument on April 3, 2018.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' Motion for Class Certification **(Doc. #88)** be **DENIED**.

1

## II. REPORT

### A. Factual Background

This case arises out of a series of allegedly unlawful searches and seizures, which were carried out by officers of the City of Detroit's Narcotics Unit (the "Unit") against licensed medical marijuana providers. According to Plaintiffs, Timothy Davis was the lawful and licensed operator of a marijuana grow facility located at Plaintiffs' residence in Warren, Michigan. (Doc. #21 at ¶ 13). In Plaintiffs' operative amended complaint, they allege the following with respect to a search and seizure that took place at their residence on December 28, 2013:

> 14. … Defendants, acting under color of law and as officers of Defendant City of Detroit's Narcotics Unit, conducted an unlawful raid of [their] home in Warren.
>
> 15. During the raid, Defendants kicked in the door and stormed Plaintiffs' home with weapons drawn for the purpose of shock and awe and without probable cause.
>
> 16. At no time during the raid did Defendants show or present to Plaintiffs a lawfully issued search warrant.
>
> 17. After forcibly entering Plaintiff's home, Defendants pointed assault rifles at Plaintiffs and ordered them onto the floor.
>
> 18. During the raid, Defendants destroyed Plaintiffs' home while demanding to know if Plaintiff had any money. Both Plaintiffs were handcuffed and seized during the raid.
>
> 19. For approximately two hours, Defendants extensively tore apart Plaintiffs' property and removed, without lawful authority, nearly fifty marijuana plants and other related legitimate and lawful by-products of Plaintiff's business.
>
> 20. After approximately two hours, Defendants transported Plaintiff Tim Davis, while handcuffed, to a facility in the City of Detroit that appeared abandoned where Plaintiff was questioned extensively for nearly five hours.
>
> 21. Defendants had no probable cause to seize and/or arrest Plaintiff

>>nor was Plaintiff ever shown a search or arrest warrant.
>
> 22. At no time was Plaintiff ever given a copy of any search warrant or a list of items that were unlawfully seized from his property.
>
> 23. Plaintiff was eventually released by Defendants and never charged with any violations of law.

(*Id.* at ¶¶ 14-23). While the details of what transpired on the night in question might be in dispute, it is not disputed that on June 12, 2015, one of the individual defendants in this case, former City of Detroit Police Officer Arthur Leavells ("Leavells"), pleaded guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, admitting to the following "factual basis" for that plea:

> From June 2010 through August 2014, in Detroit, Michigan, Defendant [Leavells] agreed with others to distribute cocaine. The cocaine was seized during the course of searches conducted by members of the Detroit Police Department. [Leavells] was an officer in [the Unit] and agreed with fellow officers to divert the cocaine from being placed into evidence. Instead, the officers worked together to distribute the seized cocaine to drug dealers who could sell it. The proceeds from the sale of the cocaine were split amongst the drug dealers and officers of [the Unit], including [Leavells].

*See United States v. Hansberry, et. al.*, Case No. 15-cr-20217, Docket No. 62.

During the criminal jury trial of some of his co-defendants, Leavells testified[1] that, in connection with his work in the Unit, he routinely lied in affidavits he provided to judicial officers in order to obtain search warrants and partake in the criminal conspiracy. (Doc. #88 at 6; Doc. #153-4 at 6-7)[2]. The amended complaint in this case contains a number of allegations geared toward a putative class of plaintiffs who allegedly suffered from such wrongdoing:

---

[1] In this civil action, Leavells has refused to answer any questions and has asserted his Fifth Amendment right against self-incrimination.

[2] Although Leavells' co-defendants were acquitted of many of the charges they were facing, two co-defendants, Bryan Watson and David Hansberry, were convicted of Conspiracy to Obtain Property by Extortion under Color of Official Right, in violation of 18 U.S.C. §§ 1951 and 1951(a). *See United States v. Hansberry, et. al.*, Case No. 15-cr-20217, Docket Nos. 176, 181.

3

> 24. Upon information and belief, Defendants have engaged in similar unlawful searches and seizures of other legitimate marijuana grow facilities in and around the City of Detroit.
>
> * * *
>
> 26. During these unconstitutional searches and seizures, Plaintiffs and dozens of other similar business owners would be threatened, intimidated, detained, and falsely arrested without probable cause.
>
> 27. Upon information and belief, Defendants routinely conducted, participated, and/or allowed the types of illegal searches and seizures described herein.

(Doc. #21 at ¶¶ 24, 26-27). The amended complaint also contains the following allegation aimed at a *Monell*[3] claim: "Defendant City of Detroit has allowed an unconstitutional policy, custom and practice to flourish within its police department under which its police officers, including Defendants, have unlawfully seized, confiscated, destroyed, or otherwise disposed of legitimate products of marijuana grow facilities." (*Id.* at ¶ 25).[4]

In the instant motion, Plaintiffs' attorneys assert that they also represent approximately twenty additional individuals (who lived in five other properties) that were subject to unlawful searches and seizures by members of the Unit. (Doc. #88 at 7). They contend that these raids were "carried out in nearly identical fashion to the Davises (i.e., each were licensed and lawful medical marijuana providers, Defendants demanded their money and seized their property without due process and without probable cause, and the search warrants produced in discovery appear fabricated) …." (*Id.* at 7 (citing Doc. #88-2)). Thus, Plaintiffs now ask this Court to certify the following proposed class:

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[4] In their instant motion, Plaintiffs assert (without citation to corroborating evidence) that Detroit Police Chief James Craig has "dismantled the [Unit] based on 'systematic problems uncovered during an Internal Affairs investigation' that revealed irregularities in the search and seizure of narcotics during raids." (Doc. #88 at 5).

4

> (a) individuals who were the owners and/or occupants of homes and/or businesses engaged in the licensed distribution of marijuana for medical purposes; (b) who were subjected to search and/or seizure by agents and/or members of the Detroit Police Department's Narcotics' Unit; [(c)][5] from the period of February 11, 2012 until the date of judgment or settlement of this case; [(d)] who were never convicted of any offense arising from the search and/or seizure; [(e)] whose search and seizure were executed without probable cause; and [(f)] where such searches and/or seizures were conducted pursuant to Defendant City of Detroit's policies, practices, and/or customs.

(Doc. #88 at 9-10 (footnote omitted)). For the reasons discussed below, the Court recommends that Plaintiffs' motion to certify this proposed class be denied.

### B. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). In order to justify a departure from this general rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 348-49 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). A district court may certify a class only after it has conducted a "rigorous analysis" to ensure that the proposed class comports with the requirements of Fed. R. Civ. P. 23. *Id.* at 351. "In the class action context, a district court is given 'substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (internal citation omitted).

Under Rule 23(a), the party seeking certification must demonstrate by a preponderance of the evidence that:

---

[5] In their motion, Plaintiffs' proposed class definition contains two separate criteria enumerated as "(b)". (Doc. #88 at 9-10).

5

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Dukes*, 564 U.S. at 349 (internal citations omitted).

In addition to the four requirements explicitly set forth in Rule 23(a), Plaintiffs must also show that their proposed class is ascertainable by reference to objective criteria.[6] *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 530 (E.D. Mich. 2015) ("An ascertainable class is 'an implied prerequisite of Federal Rule of Civil Procedure 23.'") (quoting *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011)); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 44-45 (2d Cir. 2006). As the Sixth Circuit has held:

> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria.

*Young v. Nationwide Mutual Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting MOORE'S FEDERAL PRACTICE § 23.21[3]).

In addition, class certification is only appropriate where the plaintiffs can meet the requirements of Fed. R. Civ. P. 23(b), which provides:

---

[6] The Court acknowledges that ascertainability is not a requirement for all class definitions under Fed. R. Civ. P. 23. In particular, the Sixth Circuit has held that ascertainability is not an additional requirement for cases brought under Rule 23(b)(2) "seeking *only* injunctive and declaratory relief." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (emphasis added). Plaintiffs' request for class certification under Rule 23(b)(2) is discussed *infra* at 13-18.

  (b) **Types of Class Actions**.  A class action may be maintained if Rule 23(a) is satisfied and if:

   (1) prosecuting separate actions by or against individual class members would create a risk of:

    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

   (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

   (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  In their motion, Plaintiffs principally argue that they "seek to certify a class under Rule 23(b)(2)," but they also include arguments for class certification under Rule

7

23(b)(1) and (3), as well. (Doc. #88 at 8, 19-24).

### C. Analysis

#### 1. Plaintiffs' Proposed Class Fails to Satisfy Rule 23(a)'s Ascertainability Requirement

As set forth above, in the Sixth Circuit, a proposed class must be ascertainable in order to pursue a class certification. In their motion, Plaintiffs recognize this "ascertainability" requirement, arguing that their "proposed class is limited by reference to specific, objective facts (i.e., time, place, manner) such that the court may feasibly ascertain membership in the class …." (Doc. #88 at 10). Plaintiffs' argument lacks merit.

To be ascertainable, the proposed description of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young*, 693 F.3d at 538; *see also Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015); *see also Snow v. Atofina Chemicals, Inc.*, 2006 WL 1008002, at *8-9 (E.D. Mich. Mar. 31, 2006) (recognizing that denial of class certification was appropriate if the court "could not determine whether any individual was a member of the class without hearing evidence on what would amount to the merits of each person's claim…. [D]etermin[ing] whether a person is a member of [the] class … is unmanageable virtually by definition") (quoting *Bledsoe v. Combs*, 2000 WL 681094, at *4 (S.D. Ind. Mar. 14, 2000)); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636, at *6 (N.D. Ohio July 21, 2015); *Napier v. Laurel Cty., Ky.*, 2008 WL 544468, at *6 (E.D. Ky. Feb. 26, 2008) (holding that class certification was improper because "subjective mini-trials of each putative class member" would

8

be required, and "the proposed class definitions fail to provide specificity and an objective manner of determining the members of the proposed class"). That is, "[a]dministrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011); *see also Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) ("Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries."). Courts have specifically held that a "class definition is [] too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself." *Schilling v. Kenton Cnty., Ky.*, 2011 WL 293759, at *5 (E.D. Ky. Jan. 27, 2011).

Here, Plaintiffs seek to represent putative class members who satisfy various criteria, one of which is "individuals . . . [(e)] whose search[es] and seizure[s] were executed without probable cause." (Doc. #88 at 10). This criteria cannot be determined by reference to *objective* facts,[7] and Plaintiffs make no showing as to how this particular criteria could be established without extensive and individualized fact-finding or mini-trials. While Plaintiffs do seek to limit their class to those individuals "who were never convicted of any offense arising from the search and/or seizure" (*id.*), the absence of a conviction does not mean the search was conducted without probable cause. Indeed, while the absence of a conviction could be the result of a search that lacked probable cause, it could also be the result of innumerable other causes. Thus, it is not an objective means of differentiating between searches that were conducted with or without

---

[7] The proposed criteria is distinguishable from, say, a class of individuals "whose searches and seizures were executed by the Unit" or "whose searches and seizures were undertaken pursuant to an affidavit signed by Leavells." But, the Court cannot re-write Plaintiffs' proposed class definition, and Plaintiffs do not even suggest that such broadly-defined criteria would comport with the facts known to them, or believed by them to be true.

probable cause.

In sum, by defining the proposed class as including "individuals . . . [(e)] whose search[es] and seizure[s] were executed without probable cause," (Doc. #88 at 10), Plaintiffs fail to satisfy the ascertainability requirement. The proposed class is not "sufficiently definite [such] that it is administratively feasible for the court to determine whether a particular individual is a member." *Young*, 693 F.3d at 538.

The principal case Plaintiffs rely on for their contention that their proposed class is sufficiently "limited by reference to specific, objective facts (i.e., time, place, manner) such that the court may feasibly ascertain membership" (Doc. #88 at 10), is *Stinson v. City of New York*, 282 F.R.D. 360, 369 (S.D.N.Y. 2012). While ascertainability was found in that case, the facts are critically different, and as such, *Stinson* does not support Plaintiffs' argument.

In *Stinson*, the plaintiffs alleged that they were victims of a pattern and practice whereby the New York Police Department would "stop, search, seize, arrest and issue summonses to individuals without probable cause in response to a requirement and constant pressure to meet a summons quota." *Id.* at 369. The proposed class was defined "to include individuals who were issued summonses that were later dismissed upon a judicial finding of facial insufficiency and who were ticketed without probable cause." *Id.* at 363. Integral to the holding, however, is that well before the motion to certify the class was broached, all putative class members had had their cases scrutinized under a "facial sufficiency review . . . involv[ing] a judicial determination of whether the summons [they had been] issued lacked probable cause." *Id.* at 376. Thus, the *Stinson* class members were objectively identifiable because there was a litmus test for establishing whether a lack of probable cause existed in each individual's particular case; the existence of the prior judicial determinations meant the court could identify class members

10

without having to delve into the distinct circumstances surrounding every particular search.

The instant case is materially different. Here, the Court would have to undertake the arduous process of resolving the question of probable cause in order to be able to determine whether any particular proposed class member belongs in the class. Although the record contains Leavells' admission that he routinely fabricated information contained within search warrant applications he submitted for approval, there is nothing in the record comparable to a prior judicial determination evincing whether or not probable cause existed with respect to the putative class members' individual searches. Without such a marker, the only way of identifying class members would be for the Court to sift extensively through police records, witness testimony, and other applicable evidence in each particular case to determine whether probable cause existed at the time of the search in question – a highly individualized and fact-intensive mini-trial, the necessity of which is at odds with the ascertainability requirement.

Other courts have declined to find ascertainability under similar circumstances. For example, *Wright v. City of Wilmington*, 2016 WL 1275591, at *1-2 (D. Del. Mar. 31, 2016), is a factually-similar civil rights case where the proposed class members allegedly had been searched without probable cause. The plaintiffs: (1) also relied on *Stinson* but made no showing that previous judicial determinations (or an equivalent) had taken place in regard to their individual claims; and (2) believed that ascertainability still existed because all putative class members were subjected to an allegedly unconstitutional practice where the police allegedly searched them without probable cause. *Id.* at *1-2. The court declined to certify the class, explaining:

> Although plaintiffs maintain that the *Stinson* court successfully found ascertainability on similar facts, the court finds the case inapposite. The *Stinson* court modified the class to capture only those summons dismissed for want of probable cause and to ensure that the class is not overly-inclusive, the class certified [was] defined to include individuals who were issued summonses that were later dismissed upon a judicial finding of

11

> facial insufficiency and who were ticketed without probable cause. Significantly, in *Stinson*, there were two levels of review: first stage defect review and then a judicial finding on facial insufficiency. At bar, there has been no judicial determination of a lack of probable cause or reasonable suspicion with respect to plaintiffs' proposed class. As a result … the identification of the potential members of the proposed class would require the court to engage in individualized fact finding and mini-trials.

*Id.* (internal citations and quotations omitted). As in *Wright*, Plaintiffs herein make no showing that there is something even approximating the prior judicial determinations seen in *Stinson*; therefore, *Stinson* is inapposite.

Ultimately, Plaintiffs fail to explain how anything other than extensive, individualized fact-finding and a series of mini-trials would allow the Court to ascertain whether a particular individual belongs in the proposed class. Because the putative class description is not sufficiently definite such that it would be administratively feasible for the Court to discern whether particular individuals are class members, Plaintiffs are unable to satisfy the ascertainability requirement, which is fatal to their motion to certify the proposed class. *See Rose v. Saginaw Cnty.*, 232 F.R.D. 267, (E.D. Mich. 2005) (denying class certification, in part, because the proposed class definition created difficulty for the court when trying to determine who would be an appropriate class member).[8]

---

[8] Though the Court does not reach all of the requirements outlined in Fed. R. Civ. P. 23(a), it also has doubts as to whether the numerosity element is met in this case. While Plaintiffs aver in their motion that numerosity is satisfied because there is a "likelihood of hundreds of putative class members," they currently only represent twenty additional members (residing at five other households) who were subjected to allegedly similar raids, despite the fact that this suit was filed over three years ago. (Doc. #88 at 13, 14). By itself, this argument is not a compelling showing that numerosity exists. First, "[t]he size of the putative class is not determinative of the numerosity question. The real inquiry under Rule 23(a)(1) is whether joinder would be impractical." *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 583 (W.D. Mich. 2001) (internal quotations omitted). Plaintiffs have offered no argument as to the impracticality issue, but instead merely rely on their predicted number of potential class members. Second, "[m]ere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." *Id.* at 582 (cited by *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 167 (E.D. Mich. 2006)). Third,

### *2. Class Certification is Also Inappropriate under Fed. R. Civ. P. 23(b)*

Plaintiffs' inability to satisfy the ascertainability requirement does not entirely end the analysis of whether the Court should certify their proposed class. This is because Plaintiffs argue that class certification is appropriate pursuant to Rule 23(b)(2), and the Sixth Circuit has held that ascertainability is not a requirement for cases brought under that subsection where the plaintiffs are "seeking *only* injunctive and declaratory relief."[9] *Cole*, 839 F.3d at 542 (emphasis added). *See also Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) ("The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of [sic] other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief...."). However, Plaintiffs' bare-bones argument on this issue is fundamentally flawed, and class certification under Rule 23(b)(2) is inappropriate.

In their motion, Plaintiffs argue:

> Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). These elements are met in the present case. Plaintiffs allege that Defendants have subjected them, and other class members, to unlawful searches and seizures pursuant to Defendants' unconstitutional polices, customs, and practices. Accordingly, Plaintiffs seek declaratory relief that

---

without a finding of impracticability, courts have declined to find numerosity for classes consisting of even hundreds of individuals. *See, e.g.*, 1 NEWBERG ON CLASS ACTIONS § 3:12 (5th ed.); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) (collecting cases). In short, the numerosity argument – at least as it is made in Plaintiffs' instant motion – appears to rest on questionable footing.

[9] Plaintiffs also argue that the proposed class should be certified under Rule 23(b)(1) and (3). (Doc. #88 at 20-22). However, the ascertainability requirement applies to classes certified under those rules, and Plaintiffs have not satisfied that requirement for the reasons stated above. Thus, the Court need not address the merits of Plaintiffs' arguments that certification is appropriate under Rule 23(b)(1) and (3).

> would apply to the class as a whole thus satisfying the requirements of 23(b)(2).

(Doc. #88 at 19). Essentially, then, Plaintiffs' position is that certification pursuant to Rule 23(b)(2) is appropriate because they purportedly are seeking equitable relief on behalf of "the class as a whole." (*Id.*). There are several problems with this argument.

First, nowhere in Plaintiffs' complaint or motion papers do they specify any particular equitable relief they are seeking. In the "Damages and Relief Requested" section of their operative amended complaint, Plaintiffs assert that they are "entitled to any and all damages or losses compensable under federal and state law including" damages for "emotional distress, humiliation, anguish, embarrassment, and loss of their valuable property." (Doc. #21 at ¶¶ 52, 53). Then, they assert, in conclusory fashion, that they are "also entitled to declaratory and injunctive relief to prevent the further degradation, humiliation, embarrassment, injury, and emotional distress caused by Defendants' actions …." (*Id.* at ¶ 54). But, nowhere in their amended complaint or the instant motion do Plaintiffs articulate the precise form this declaratory or injunctive relief would take, making it all but impossible for the Court to conduct the "rigorous analysis" required when evaluating class certification motions. In *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1291 (11th Cir. 2014), the court affirmed the district court's refusal to certify a class under Rule 23(b)(2) for just this reason, noting it was the plaintiff's burden to identify "exactly what injunctive or declaratory relief it was seeking." There, the plaintiff "requested only such declaratory and injunctive relief as appropriate in order to compel and ensure defendant['s] future compliance with law." *Id.* (internal quotations omitted). Here, as in *Lakeland*, the Plaintiffs' failure to specify the precise injunctive or declaratory relief they seek is a sufficient basis to reject their 23(b)(2) argument.

Second, there is no assertion that any particular plaintiff is in need of injunctive relief to

14

prevent a future violation of his or her rights. *Cf. Cole*, 839 F.3d at 540, 542 ("In its order denying the City's motion to modify the class, the district court further noted that the relief sought – an injunction against the further execution of the Beale Street Sweep – provide[d] a single remedy to protect all class members from future harm. . . . The main [] purpose of a (b)(2) class is to provide relief through a *single* injunction or declaratory judgment.") (internal quotations omitted) (emphasis in original). In fact, in this case – both in the instant motion and at oral argument – Plaintiffs conceded that injunctive relief is not appropriate because the Unit was "dismantled" after an Internal Affairs investigation "revealed irregularities in the search and seizure of narcotics during raids." (Doc. #88 at 5). As a result, it is clear that the portion of Rule 23(b)(2) that speaks to injunctive relief is not met. *See Hendricks v. UBS Fin. Servs., Inc.*, 546 F. App'x 514, 520 (5th Cir. 2013) (holding that "an injunction is not appropriate when the plaintiff would not benefit from prospective relief ….").[10]

Plaintiffs' vague references to "declaratory relief" also get them nowhere. Plaintiffs argued at the hearing that certification is appropriate under Rule 23(b)(2) because, in addition to damages, they seek declaratory relief in their amended complaint. It now appears that Plaintiffs seek a declaration, which would apply class-wide, that the Unit operated pursuant to the City of Detroit's "unconstitutional policies, customs, and practices" (Doc. #88 at 19), in violation of the class members' Fourth Amendment rights.

As an initial matter, Plaintiffs appear to misinterpret the Rule. On its face, Rule 23(b)(2)

---

[10] The authorities relied upon by Plaintiffs as to this point are not persuasive. Primarily, Plaintiffs cite *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976), for its ruling that, "'Lawsuits alleging class-wide discrimination are particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy.'" (Doc. #88 at 19-20). But in *Senter*, the court found Rule 23(b)(2) applicable because the "[plaintiffs'] primary prayer was for injunctive relief[.]" *Senter*, 532 F.2d at 525. Here, in contrast, Plaintiffs have specifically disavowed a request for such relief.

15

is not satisfied merely because would-be class plaintiffs, as part of their case, seek declaratory relief.  Rather, Rule 23(b)(2) applies to "final injunctive or corresponding declarative relief," which suggests that the declaratory relief being sought must *correspond to* final injunctive relief.  In other words, the only declaratory relief covered by Rule 23(b)(2) is that which, "'as a practical matter [] affords injunctive relief or serves as a basis for later injunctive relief' rather than as a basis for later damage awards."  2 NEWBERG ON CLASS ACTIONS § 4:31 (5th ed.) (quoting Advisory Committee Notes, 39 F.R.D. 69, 102 (1966)).  Here, where Plaintiffs make no showing whatsoever that the declaratory relief they seek would correspond to final injunctive relief, their interpretation of Rule 23(b)(2)'s "declaratory relief" requirement must be rejected.

Moreover, it is clear that, despite their vague request for "declaratory relief," the only real relief Plaintiffs seek in this litigation is monetary damages.  Here, the declaratory "relief" sought by Plaintiffs – namely, a declaration that the Unit operated pursuant to the City of Detroit's unconstitutional policies, customs, and practices – gives them no actual relief (and does not remedy[11] any wrong), and would be nothing more than a *factual* determination of an issue which might lead to an award of money damages against the City under a *Monell* claim.  Under similar circumstances, courts have rejected such attempts to shoehorn damages actions into the Rule 23(b)(2) framework by casting claims as ones for declaratory relief.  *See, e.g., Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 961 (N.D. Ohio 2009) ("[A]n action seeking a declaration that certain conduct constitutes a breach of conduct would not qualify under Rule 23(b)(2) because the effect simply is to lay the basis for a damage award rather than injunctive relief.") (internal quotations omitted); *Lopez v. Sears, Roebuck & Co.*, 2012 WL

---

[11] "Because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action." *Cole*, 839 F.3d at 542 (quoting *Shelton*, 775 F.3d at 561).

16

13042619, at *2 (W.D. Wisc. Oct. 11, 2012) (where declaration regarding the illegality of the defendant's compensation policy would not be a "final remedy" for purposes of Rule 23(b)(2), but would "merely lay the an evidentiary foundation for subsequent determinations of liability[,]" certification was not appropriate) (internal quotations omitted).

Finally, Plaintiffs cannot cure the problems discussed above by attempting to certify a declaratory relief "subclass." At the hearing, Plaintiffs suggested that the proposed class could be certified for purposes of determining the City of Detroit's liability under *Monell*, and then a separate sub-class could be formed, from which members could be given notice and a chance to "opt out" to pursue their own individual claims for damages under one of Rule 23(b)'s other subsections. Plaintiffs did not meaningfully discuss this approach in their motion papers, but it appears they may have been envisioning an approach like that at issue in *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 427 (6th Cir. 2012) (which they mention in one sentence in their reply brief). (Doc. #93 at 5).

In *Gooch*, the Sixth Circuit approved a request to "certify a 'Declaratory Relief Class . . . pursuant to Rule 23(b)(2) . . . and, at such time as the Court deems proper, then certify the Restitution/Monetary Relief Sub-Class as a class action pursuant to Rule 23(b)(3).'" *Gooch*, 672 F.3d 427 (emphasis in original). *Gooch* is inapposite, however. Unlike in this case, the proposed Rule 23(b)(2) class in *Gooch* sought to obtain actual declaratory relief – a judicial determination "about the meaning of a contract." *Id. See also*, *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) ("The proper interpretation of a contract is a question of law."). Here, however, the purported "declaratory relief" being sought by the proposed class is nothing more than a factual determination as to whether or not the Unit operated pursuant to the City of Detroit's "unconstitutional policies, customs, and practices." Thus, whereas the sub-

17

class approach in *Gooch* fit into Rule 23(b)(2)'s framework for providing class members with equitable relief, the same simply cannot be said of the class proposed by Plaintiffs here.

For all of the reasons discussed above, class certification under to Rule 23(b)(2) would be inappropriate.

### III. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Plaintiffs' Motion for Class Certification **(Doc. #88)** be **DENIED**.

Dated: May 11, 2018  s/ David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a) and (b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Order and Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response

should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2018.

/s/ Eddrey O. Butts
EDDREY O. BUTTS
Case Manager